IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOBBY LYNN DAILEY, | § | |
| TDCJ #1380815, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-1878 |
| | § | |
| WARDEN WYNN, UNIT, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Bobby Lynn Dailey (TDCJ #1380815) has filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the conditions of his confinement including the provision of medical care. At the Court's request, Daily also filed a more definite statement of his claims. Doc. # 9. Pending before the Court is a motion to dismiss for failure to state a claim filed by defendant Billy Hirsch, Warden at the TDCJ Wynne Unit. Doc. # 22. There is also a motion for summary judgment filed by Dr. Abbas Khoshdel. Doc. # 39. Dailey has responded to the defendants' motions and has filed cross-motions for summary judgment on his behalf Docs. # 43 and # 45. After reviewing all of the pleadings and the applicable law, the Court concludes that the plaintiff's motions should be **denied**, the defendants' motions should be **granted** and the complaint must be **dismissed** for the reasons set forth below.

## I.   **FACTUAL BACKGROUND**

### A.   **Dailey's Allegations**

Dailey is currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the McConnell Unit in Beeville, Texas. Dailey states that he was disabled from a motorcycle accident before he entered TDCJ and has had to use a cane to perform daily activities.  Doc. # 9, p. 3.    He was seriously injured when Dexter Brooks, his cellmate at the TDCJ Polunsky Unit ("Polunsky"), assaulted him on October 17, 2011, by using his cane his cane to beat him.  *Id.* at 4.  Daily was transferred after the attack to the TDCJ Estelle Unit for medical treatment because he had sustained multiple head lacerations and skull fractures including damage to his eye socket.  He states that he required 27 staples along his hairline and 8 stitches around his eye.  *Id.*  After several trips to medical facilities for treatment and analysis, Dailey was transferred to the TDCJ Wynne Unit ("Wynne") on December 19, 2011.

Dailey alleges that he needed corrective surgery after the attack because he experienced blurry vision and could not open one eye.  He states that x-rays revealed that there were bone fractures under his eye and that surgery was necessary to rebuild the bone to set the eye back in place.  Dailey states that he first submitted a sick call at Wynne, complaining that his head was swelling and that he was no longer receiving

pain medication.  Doc. # 9, p. 6.   He alleges that he was assured that the corrective surgery would be performed on him as soon as he could be returned to the University of Texas Medical Branch ("UTMB") Hospital in Galveston ("Galveston").  Doc. # 9, p. 6.  However, the surgery was delayed and he continued to suffer from his injuries. Doc. # 9, p. 7.  He continued to experience blurry vision and still could not open one eye without using his hand to force it open.  Doc. # 9, p. 7.   When he did open his eye, he experienced double vision and dizziness.  *Id.*  Dailey states that he continued to file grievances complaining about the delay in addressing his medical needs, but was unable to get a satisfactory response.  Doc. # 9, p. 10-12.  He filed Step 1 Grievance requesting medical treatment on January 31, 2012.  *Id.* at 12.  After receiving a response on February 22, 2012, Dailey filed a Step 2 Grievance on February 29, 2012.  *Id.*  Dailey contends that he did not get a satisfactory response to his grievances.  Instead, he claims his housing assignment was changed in retaliation for filing his grievances.  *Id.*

Dailey alleges that his classification file contained lower bunk restrictions due to the motorcycle accident.  He alleges that someone removed the restrictions on March 29, 2012, and he was reassigned to an upper bunk.  Doc. # 9, p. 12.  Dailey alleges that he was forced to sleep on the floor because he could not reach the upper bunk. Dailey notified UTMB about the problem on April 19, 2012, and he was

reassigned to a lower bunk.  Dailey contends that the restrictions were removed in retaliation for filing grievances about the lack of medical care.  Dailey contends that Warden Hirsch is responsible for the retaliation and that both Warden Hirsch and Dr. Khoshdel are responsible for the denial of medical services.[1]   He seeks monetary damages and an order releasing him from TDCJ so that he may have access to his personal physician for treatment.

### B.   Defendants' Arguments

Although the claims against both of the defendants are linked to his complaint about the treatment he received after his assault, Dailey's claims against each defendant differ, and they have filed separate motions seeking dismissal of the complaint against them.  Therefore, the Court will address their arguments separately.

### 1.   Warden Billy Hirsch

Warden Hirsch's argues that Dailey's claim against him has no legal basis because he has no personal involvement in, or responsibility for, decisions regarding Dailey's medical treatment and classification.  He presents the following grounds in

---

[1] Dailey also named the Polunksy Unit Warden and Polunsky Unit medical director as defendants along with inmate Brooks and former TDCJ Director Rick Thaler.  The claims against officials at the Polunsky Unit were dismissed without prejudice because the Polunsky Unit is located in the Eastern District of Texas.  Dailey filed a civil rights complaint there. *Dailey v. Polunsky Unit Warden,* Civil No. 9:13cv0044 (E.D. Tex.).  Dailey's civil rights claims against Brooks have no basis because Brooks is not a state official.  *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001).  Thaler, who has retired, cannot be sued because there is no indication that he was personally involved in the alleged deprivations. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011)

4

support of his argument that the claim against him should be dismissed:

- Hirsch states that he is a TDCJ employee and not a healthcare professional or an employee of the UTMB system.  He further states that UTMB and its employees have the authority to make decisions regarding Dailey's treatment. Hirsch contends that Dailey's claims against him regarding medical treatment are baseless because he is attempting to hold him responsible for the actions of UTMB.

- Hirsch denies retaliating against Dailey for complaining about his medical care. He states that there are no facts showing that he was involved in the alleged retaliation. He states that UTMB employees are responsible for Dailey's medical treatment and health related housing restrictions.   Hirsch also states that a UTMB employee reinstated Dailey's bottom bunk restriction when he complained about being assigned to a top bunk.  Hirsch further contends that Daily has no evidence that he retaliated against Dailey for complaining about denial of medical services.

- Hirsch contends that he is entitled to qualified immunity because he is a government official and Dailey cannot show he violated a clearly established statutory or constitutional right.  Hirsch reiterates his argument that Dailey has not shown how he was personally involved in the alleged denial of adequate

medical care or retaliation for complaining about the alleged inadequate medical care.

•     Hirsch contends that he is immune to monetary damages claims brought against him in his official capacity because the Eleventh Amendment bars suits in federal court against the states or their agencies.[2]  He asserts that the State of Texas has not waived this immunity and that Congress has not abrogated it.

### 2.     Dr. Abbas Khoshdel

Dr. Khoshdel moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Doc. # 39.  In support of his motion, Dr. Khoshdel has submitted the following records:

•     **Exhibit A**:  Relevant portions of TDCJ Health Services Archives for Bobby Lynn Dailey (Doc. # 40): and

•     **Exhibit B:**  UTMB Records of Bobby Lynn Dailey's Surgery.  Doc. # 40-1.

The records show that a UTMB doctor in Galveston operated on Dailey's right upper eyelid on April 24, 2013.  Doc. # 40-1, p. 5.  Dr. Khoshdel asserts that Dailey had been placed on a wait list for the procedure.  He also asserts the defense of qualified immunity and contends that he was not subjectively aware of Dailey's

---

[2]     The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.

condition.  He also states that he had no personal involvement in any of the decisions regarding Dailey's treatment and could  have done nothing to ensure that the surgery was performed any earlier.

## II.  <u>DISCUSSION</u>

### A.  <u>Hirsch</u>

Hirsch seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Dailey has failed to state a claim upon which relief may be granted and for lack of subject matter jurisdiction.  Doc. # 22, p. 7.  Hirsch also asserts that he is entitled to qualified immunity against claims brought against him in his individual capacity and contends that the court has no jurisdiction over claims brought against him in his official capacity.

### 1.  **Legal Standards**

**Motion to Dismiss for Failure to State a Claim. —** Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor" and should be granted only if it is evident that the plaintiff cannot prove any set of facts entitling him to relief.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citations omitted).  In determining whether the plaintiff has stated a claim upon which relief can be granted, a reviewing court must accept the well-pleaded facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiff. *Id.*  It is well established that

*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Propes v. Quarterman*, 573 F.3d 225, 228 (5th Cir. 2009).  At the same time, however, a plaintiff "must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim." *Kane Enters. v. MacGregor (USA), Inc*., 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). Therefore, a reviewing court must determine whether the complaint provides "enough facts to state a claim to relief that is plausible on its face." *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012)  (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A compliant is insufficient if it merely contains "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Id.*

**Qualified Immunity.—** Qualified immunity is an affirmative defense which shields public officials from civil liability for acts committed pursuant to their authorized duties.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Manis v. Lawson*, 585 F.3d 839, 845-846 (5th Cir. 2009).  Qualified immunity protects government employees against claims brought against them in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Wernecke v.*

8

*Garcia,* 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow*, 458 U.S. at 818) (internal

quotation marks omitted).  "Qualified immunity gives government officials breathing

room to make reasonable but mistaken judgments about open legal questions."

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).  "The doctrine of qualified

immunity protects government officials from civil damages liability when their

actions could reasonably have been believed to be legal."  *Morgan v. Swanson*, 659

F.3d 359, 370 (5th Cir. 2011).

This protection is extended to "'all but the plainly incompetent or those who

knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341

(1986)).  It is applicable regardless of whether a government official's reasonable

error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of

law and fact."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v.

Ramirez,* 540 U.S. 551, 567 (2004)).  The official is immune from suit if the law at the

time of the constitutional violation does not give him fair notice that the conduct is

unlawful.  *Manis*, 585 F.3d at 846 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198

(2004)).

Determining whether a public official is entitled to qualified immunity entails

a two-part inquiry by the reviewing court.  *See Pearson v. Callahan*, 555 U.S. 223,

232 (2009).   The first prong of the analysis asks whether, taken in the light most

favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. *See id.* at 815-16; *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted). The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). There is no mandatory sequence that the court must follow in applying the two parts of the qualified immunity test. *Pearson*, 555 U.S. at 236.

**Denial of Medical Attention: Deliberate Indifference.—** An inmate's claim that he was denied treatment for his serious medical needs is analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment which obliges prison officials to provide basic medical care inmates. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). To assert a cognizable complaint of denial of adequate medical care, the plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106 (1976). A claim of deliberate indifference requires a showing that the official knew of and disregarded an excessive risk to the plaintiff's health or safety. *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir.

2009).  Custodial officials cannot be held liable unless it is shown that they have acted

with a sufficiently culpable state of mind.  *Id*.  "[T]he official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."  *Id.* (quoting *Farmer v. Brennan*, 511

U.S. 825, 837 (1994).  Officials who are not health care providers may rely on the

expertise of those who are to make decisions regarding the need for treatment and

accommodations.  *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

**Retaliation—** In order to assert a retaliation claim, a prisoner must show "(1)

a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner

for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."

*McFaul v. Valenzuela*, 684 F.3d 564, 578 (5th Cir. 2012) (quoting *Jones v. Greninger*,

188 F.3d 322, 324-25 (5th Cir. 1999).  To assert a claim of retaliation, the plaintiff

must present a series of events from which retaliation can be inferred.  *See Morris v.

Powell*, 449 F.3d 682 (5th Cir. 2006).   This requires a showing that he exercised a

protected right and that the defendants acted adversely to deter him from exercising

that right.  *Bibbs v. Early*, 541 F.3d 267, 272 (5th Cir. 2008); *Morris v. Powell*, 449

F.3d at 685.

Proof of causation requires a showing that "but for the retaliatory motive the

complained of incident . . . would not have occurred."  *MacDonald,* 132 F.3d 225, 231

11

(5th Cir. 1998) (quoting *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)).

In other words, the prison inmate must either produce direct evidence of motivation or show that but for some retaliatory motive the complained of incident would not have happened. *Allen v. Thomas,* 388 F.3d 147, 149 (5th Cir. 2004) (citing *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995)). The Court must also consider whether the plaintiff has shown that the defendant's adverse act caused him to suffer an injury that would "chill a person of ordinary firmness from continuing" to exercise the protected right. *Izen v. Catalina,* 398 F.3d 363, 367 (5th Cir. 2005). Acts that may be "motivated by retaliatory intent, [but] are so *de minimis* that they would not deter the ordinary person from further exercise of his rights" do not support a claim of retaliation. *Morris,* 449 F.3d at 686.

### 2.    Analysis

**Medical Care.**— Dailey contends that Hirsch violated his right of access to medical care by delaying his surgery, but he provides no specific details on how Hirsch prevented him from undergoing the surgery. Doc. # 9, p. 34. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Dailey must allege facts which demonstrate that Hirsch was either personally involved in the alleged deprivation or that his actions were causally connected to the deprivation. *James v. Texas Collin County*, 535 F.3d

365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir. 1999).  He cannot rely on allegations that Hirsch had supervisory authority over those who may have violated his constitutional or statutory rights.  *Id.*

Dailey has only asserted conclusory allegations that Hirsch delayed his surgery without providing any facts to support his contentions.  Doc. # 9, p. 34.  He does not allege any facts which indicate that Dailey had any contact with him or direct involvement with his medical care.  He does not even assert facts which demonstrate that Hirsch, a non-healthcare worker, was even aware of his condition.  Consequently, Dailey fails to assert a claim that Hirsch violated his right of access to medical care. *Newby v. Enron Corp.* 394 F.3d 296, 309 (5th Cir. 2004) ("Litigants must allege constitutional violations with 'factual detail and particularity.'") (quoting *Jackson v. Widnall,* 99 F.3d 710, 716 (5th Cir.1996)); *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (plaintiff must present more than "conclusional assertions."). *See also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009) (citing *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").  Therefore, Dailey has failed to allege a clear violation of the law and his unsupported claim that Hirsch denied him medical care shall be dismissed.

**Retaliation.—**  Dailey also fails to assert sufficient facts that demonstrate that

Hirsch retaliated against him for exercising a protected right.  Prisoners' claims of retaliation are considered warily by the courts lest they become embroiled in the multitudes of disciplinary actions and grievances filed daily in the prisons.  *Woods*, 60 F.3d at 1166.  Dailey alleges that his medical restrictions were lifted after he filed a Step 2 grievance regarding his alleged denial of medical care.  Doc. # 9, p. 35.  He admits that he does not know exactly when the restrictions were lifted or who accessed his records to change them.  *Id.*  He further admits that he was not told that he would suffer any consequences for filing his grievances.  *Id.* at 37.  He also admits that the removal of the restrictions was temporary.  However, he contends that the lifting of the medical restrictions demonstrates that he had been subjected to retaliation because the restrictions had been in place since 2006 and that he suffered pain and discomfort as a result of the housing reassignment.  *Id.*

At best, Dailey has only shown that he lost his housing assignment restriction after he filed a grievance about medical care.  He has failed to show that Hirsch was involved in the decision or that Hirsch was even aware of the Dailey's grievance about the operation delay.   Dailey's conclusory allegations fail to show that Hirsch retaliated against him for filing the grievance.  *Armenta v. Pryor*, 377 F. App'x 413, 416-17 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).  Dailey's retaliation claim is also dismissible because he fails to assert facts which show that Hirsch was involved

in the decision to reassign him.  *Thompson*, 709 F.2d at 382 ; *see also Aruanno v. Main*, 467 F. App'x 134, 138 (3d Cir. 2012) (upholding dismissal of prisoner's retaliation claims on the basis that he failed to allege that the defendants were personally involved in any wrongdoing).  Dailey has failed to assert an actionable claim against Hirsch in his individual capacity.

**Official Capacity Claims.—** Dailey has also failed to assert a claim against Hirsch in his official capacity.  Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court).  Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency.  *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002); *Cozzo v. Tangipahoa Parish Council,* 279 F.3d 273, 280 (5th Cir.2002); *Oliver*, 276 F.3d at 741. Suits against state employees in their official capacities are in reality suits against the states that employ them.  *Wills v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  Consequently, Daily's claims against Hirsch in his official capacity are barred.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996)

(citing *Wills*).

## B.   <u>Dr. Khoshdel</u>

Dr. Khoshdel seeks dismissal under Rule 56 of the Federal Rules of Civil Procedure on the ground that the evidence proves that he did not violate Dailey's constitutional right not to be subjected to cruel and unusual punishment.  Doc. # 39. He also asserts the defenses of qualified immunity and official immunity.

### 1.   **Legal Standards**

**Motion for Summary Judgment.—**  A movant is entitled to summary judgment if he shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).  In considering such a motion, this court construes "all facts and inferences in the light most favorable to the nonmoving party."  *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotations marks omitted).  For summary judgment, the movant has the burden of showing that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 325.  In doing so, the movant must establish the "absence of evidence to support an essential element of the non-movant's case."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal citations omitted).  The motion for summary judgment

must be denied if the movant fails to meet this initial burden.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  However, if the movant does succeed in meeting this burden, the non-movant must go beyond the pleadings and identify specific facts showing that there is a genuine issue of a material fact warranting trial.  *Id.*

To prove there is an absence of evidence in support of the non-movant's claim, the movant must identify areas that are essential to the claim in which there is an "absence of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  However, the movant "need not negate the elements of the non-movant's case."  *Boudreaux v. Swift Transp. Co. Inc*., 402 F.3d 536, 540 (5th Cir. 2005).  Moreover, mere conclusions and allegations are not summary judgment evidence and cannot be used to defeat or support a motion for summary judgment.  *Topalian v. Ehrman¸* 954 F.2d 1125, 1131 (5th Cir. 1992).  To successfully oppose a motion for summary judgment, the non-movant must present specific facts showing "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc.*, *v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).  If the non-movant fails to point out evidence opposing summary judgment, it is not the court's duty to search the record for such evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

***Qualified Immunity Proof.*—** Like Hirsch, Dr. Khoshdel has asserted the defense of qualified immunity with regard to his motion for summary judgment. The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *See Michalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof," but must offer more than "mere allegations") (quotation omitted).

***Eighth Amendment Requirements.*—**The Eighth Amendment to the Constitution prohibits health care professionals from knowingly denying necessary medical treatment to prison inmates. *Lawson v. Dallas County*, 286 F.3d 257, 262

(5th Cir. 2002).  It protects inmates against by officials whose acts of deliberate indifference  would endanger their basic health and medical needs.  *Estelle*, 429 U.S. at 103.

To establish deliberate indifference, it must be shown that (1) the defendant was aware of facts from which he could deduce that the inmate's health was at risk and (2) that the defendant actually drew an inference that the potential for harm existed.  *See Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "'Deliberate indifference is an extremely high standard to meet.'"  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  There must be evidence showing that the defendant actually knew of the inmate's serious medical need or condition and disregarded it.  *Brewer v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).  An inmate's serious medical need is one that has been diagnosed by a doctor or other health professional or one that is so obvious that even a layman would recognize that special care or attention is required when handling the inmate. *Batiste v. Theriot*, 458 F. App'x 351, 357 (5th Cir. 2012) (citing *Gobert*, 463 F.3d at 345 n.12); *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  "A delay in medical care violates the Eighth Amendment only if it is due to deliberate indifference and results in substantial harm."  *Perkins v. Texas*

*Department of Criminal Justice - Correctional Institutional Div.*, 514 F. App'x 488, 489 (5th Cir. 2013) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

### 2.    Analysis

Dailey contends that Dr. Khoshdel denied him medical attention for his injured eye.  He specifically alleges that Khoshdel prevented or delayed surgery that was necessary to repair the eye.

Khoshdel has submitted records which show that he was not personally involved in any treatment for Dailey's injured eye.  Docs. # 40 and # 40-1.  There are entries indicating that Dr. Khoshdel prescribed  Proventil-hfa (an asthma medication) (Doc. # 40, p. 3) and Diphenhydramine (an antihistamine) (Doc. # 40, p. 5) for Dailey, but there is no evidence in the record to support Dailey's allegation that Dr. Khoshdel was involved in the decision to schedule or provide the eye operation.  The records show that the determination was made by officials at the Galveston Hospital where Dailey had been referred for surgery.  *See* Doc. 40, pp. 15, 17, and 24.  Medical staff at the Wynn Unit did provide Dailey with eye drops and pain relievers while he waited to be scheduled for an operation at Galveston. Doc. # 40, pp. 13, 15.  The documents also demonstrate that health care workers at Galveston did treat Dailey's injuries and that an operation on his right upper eyelid was performed on April 24, 2013.  Doc. #

40-1, pp. 5-6.  Dailey was returned to his unit the next day with eye drops and was ordered to avoid heavy lifting and strenuous activities.  *Id.* at 57.  He was also scheduled for a follow appointment at the ophthalmology clinic. *Id.*

The medical records, which show that Dailey's eye was treated after the assault, refute his claims that his medical needs were ignored.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); *Mendoza v. Lynaugh*, 989 F.2d at 193-95.  Dr. Khoshdel contends that Dailey's complaint shows nothing more than his subjective belief that he should not have waited so long for the operation and that he blames Khoshdel for the delay.  The record, which shows no involvement by Khoshdel in Dailey's eye treatment, supports this argument.  *See Gobert v. Caldwell*, 463 F.3d 339, 346-47 (5th Cir. 2006).

There are no guarantees that an inmate's ailments will be expeditiously or successfully treated.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)).  There is no support for Dailey's contention that the delay in scheduling the operation violated his rights under the Eighth Amendment.  *Perkins*, 514 F. App'x at 489. *See also Garrett v. University of Texas Medical Branch*, 261 F. App'x 759, 760 (5th Cir. 2008) (citing *Varnado*).  Dailey's disagreement with the method of treatment or timing of the operation does

not support a claim of deliberate indifference.  *Sama v. Hannigan*, 669 F.3d 585, 590-591 (5th Cir. 2012); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, Dr. Khoshdel is entitled to summary judgment on his affirmative defense of qualified immunity with regard to his individual liability because there are no genuine issues of material fact regarding Dailey's claims of deliberate indifference. Like Hirsch, Dr. Khoshdel is immune to claims brought against him in his official capacity.  *Oliver*, 276 F.3d at 741-42.

### C.    **Dailey's Request for Injunctive Relief**

In addition to seeking monetary damages, Dailey seeks an order releasing him from prison so that he may seek medical attention.   Such requests are not cognizable in a civil rights proceeding.   *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Boyd v. Biggers*, 31 F.3d 279, 283 n.4. (5th Cir. 1994).   Further, the records show that Dailey has received the desire operation which moots his request.   *Oliver*, 276 F.3d at 741-42 (5th Cir. 2002); *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998).

### III.   **DAILEY'S MOTIONS FOR SUMMARY JUDGMENT**

Dailey has filed two motions for summary judgment (Docs. # 43 and # 45) which consist entirely of unsupported assertions that Khoshdel was deliberately indifferent to Dailey's medical needs.   Dailey's conclusory allegations   are not

competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment. *See Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985); *United States v. An Article of Drug,* 725 F.2d 976, 984-85 (5th Cir.1984).  The motions are **denied**.                    **IV.**

### CONCLUSION

For all the foregoing reasons, Dailey has failed to assert a claim against Warden Hirsch that has any legal basis, and he has failed to show that there is a genuine issue of material fact on any claim he has against Dr. Khoshdel. The Court therefore grants judgment in favor of the defendants.  It is therefore

**ORDERED** that Defendant Hirsch's motion for judgment on the pleadings [Doc. # 22] is **GRANTED**. It is further

**ORDERED** that Defendant Khoshdel's motion for summary judgment [Doc. # 39] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's motions for summary judgment [Docs. # 43 and # 45] are **DENIED**.  It is further

**ORDERED** that Defendant Khoshdel's motion to seal records [Doc. # 38] is **GRANTED**.  It is further

**ORDERED** that the plaintiff's motion to reset any further arguments and set date for trial [Doc. # 49] and his motion to rest any further argument and set date

for trial [Doc. # 50] are **DENIED as moot.**  It is further

      **ORDERED** that this prisoner civil rights suit is **DISMISSED with prejudice**.

      The Clerk is directed to provide a copy of this Memorandum and Order to the parties.

      SIGNED at Houston, Texas on  September 9, 2013.

Nancy F. Atlas
United States District Judge

24